## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

STEVEN R. WILKERSON       *

Plaintiff             *

v                   *       Civil Action No. JFM-14-2386

WARDEN, CENTRAL BOOKING AND   *
INTAKE CENTER, et al.
                    *

Defendants

                ***

## MEMORANDUM

Pending is defendants' motion to dismiss or for summary judgment (ECF 16) which is unopposed by plaintiff.[1] The court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons that follow, defendants' motion, construed as a motion to dismiss, shall be granted.

### Background

Plaintiff who, was at all times relevant to this case, incarcerated at Central Booking and Intake Center (CBIC) in Baltimore, Maryland, alleges he is Jewish and was denied Kosher meals. ECF 1. He asserts "they are trying to give me a vegetarian diet" instead of a Kosher diet and, as a result he did not eat for 22 days causing a weight loss of approximately 40 pounds. *Id.*

In his court-directed amended complaint, plaintiff asserts he was interviewed by Officer Mcffe on July 1, 2014, at CBIC. When asked about his religion plaintiff responded "Judaism" and explained he could only eat Kosher foods. Plaintiff claims this information was put into the

---

[1] Plaintiff's address changed twice during the pendency of this case and he notified the court as required by Local Rule 102.1.b.iii. (D. Md. 2014). ECF 6 and 10. Mail sent to plaintiff advising of his right to respond to the dispositive motion and of the consequences of failing to do so was returned to the court marked "return to sender." ECF 18. Plaintiff was released from incarceration on August 26, 2014 after pleading guilty to charges of second degree assault (ECF 16-2) and never advised the court of his new address. Thus, plaintiff's failure to receive notice regarding the pending dispositive motion is the direct result of his failure to update his address.

computer system for the jail. ECF 3 at p. 2.   Additionally, plaintiff claims that he gave the same information to a medical provider soon after talking to Mcffe. He states the "medical provider" asked him what a Kosher diet was; plaintiff answered it was a religious diet; and the medical provider stated a record would be made of it and sent to the warden. *Id.* at p. 3.

On July 8, 2014, plaintiff states he spoke with Sergeant Adeyemi, who called Major Stewart about the fact that plaintiff had not eaten any food for eight days. Plaintiff claims Adeyemi told him that Major Stewart was "working on getting some kosher food" for him. *Id.*

On July 11, 2014, plaintiff states he sent in a request slip to the Chaplain's office requesting a religious, Kosher diet. When plaintiff spoke with the Chaplain, whom he does not name, he claims the Chaplain said he would "talk to his boss" about starting plaintiff on a Kosher diet. *Id.* Plaintiff claims in that same time period, he spoke with Chaplain Spuler who instructed plaintiff to file a request form for a Kosher diet. *Id.* at pp. 3. -4.

Plaintiff states that he was also seen by a Rabbi from the Maryland Division of Correction who told plaintiff he would send him a prayer book, a Torah, and a Tallit for praying. In addition, the Rabbi told plaintiff that Stephanie Coast from the Division of Correction had sent him an e-mail about plaintiff being placed on a religious diet. *Id.* at p. 4.

Plaintiff claims that his health was beginning to decline because he was not eating. He states he was seen by Dr. Kelly, who sent e-mails to the Warden, the Chaplain, and the Dietary Department about plaintiff not receiving a religious diet. Dr. Kelly also explained that plaintiff was not eating due to the lack of a Kosher diet being provided. *Id.* at p. 4.

On July 24, 2014, plaintiff states he talked to Lt. Gilmore about not receiving a Kosher tray. Plaintiff claims Gilmore said the Rabbi was supposed to get the food for plaintiff. At 1:30 p.m. that day, plaintiff states he passed out from not eating and he was sent to the medical

department where he was given I.V. fluids by a medical provider. Plaintiff claims he was weighed and it was determined that he had gone from 225 pounds to 165 pounds in a 23 day period. Following the medical care provided, plaintiff claims he was sent back to his cell and no further steps were taken to provide him with adequate nutrition. *Id.* at pp. 4 – 5.

On July 26 or 27, 2014, plaintiff states he spoke with a Captain or a Lieutenant at CBIC and was escorted to the medical department where he was again given IV fluids. In addition, plaintiff states that he was provided with three boiled eggs and four bananas, but plaintiff only ate the bananas as the eggs were not Kosher. *Id.* at p. 5.

On July 28, 2014, plaintiff was transferred to the Baltimore City Detention Center (BCDC). He states his property was searched and plaintiff later discovered that paperwork with the names, dates, and times of the events surrounding his attempts to resolve the issues about receiving a Kosher diet were missing. Plaintiff states he brought the missing paperwork to the attention of BCDC staff and they claimed there was nothing they could do. *Id.* at pp. 5 – 6.

On August 7, 2014, plaintiff spoke with Director Oliver of BCDC about his need for a Kosher diet. Oliver informed plaintiff that she sent an e-mail to the Chaplain. Plaintiff claims one or two days afterward he received a visit from the Chaplain who told him his Kosher diet was not approved. *Id.* at p. 6.

On August 11 and 13, 2014, plaintiff states he spoke with Warden Foxwell and Assistant Warden Campbell regarding Kosher meals. He claims both Foxwell and Campbell met his concern with the question, "What would you like us to do? Cook you a Kosher meal?" *Id.* at p. 6. Plaintiff states he was then ordered to keep walking. *Id.*

Plaintiff claims that his transfer on July 28, 2014, was an effort to discourage or punish his efforts to obtain a Kosher diet. He states that the conditions at BCDC were worse than those

3

at CBIC. He claims BCDC is not air-conditioned and is overcrowded. He further claims he was put into a cell with no running hot water where he remained on lock down for 24 hours a day some days with other days providing him only one-half hour out of his cell. He states there were mice, roaches, and other infestations at BCDC and claims these conditions were imposed as a punishment. *Id.*

As relief, plaintiff seeks an order requiring the provision of Kosher diets and punitive damages in the amount of $500,000. ECF 3 at p. 2.

### Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but

4

the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotations omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

### Analysis

Mootness

Article III of the Constitution limits the judicial power to "actual, ongoing cases or controversies." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477(1990) (citations omitted). A case becomes moot when the issues presented are "no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.,* 529 U.S. 277, 287(2000) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). For a declaratory judgment to issue, there must be a dispute which "calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 242, (1937). *See also Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941). Where injunctive or declaratory relief is requested in an inmate's complaint, it is possible for events occurring subsequent to the filing of the complaint to render the matter moot. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir.1991) (transfer of prisoner moots his Eighth Amendment claims for injunctive and declaratory relief); *see also Slade v. Hampton Roads Regional Jail*, 407 F.3d 243, 248–49 (4th Cir. 2005) (pre-trial detainee's release moots his claim for injunctive relief); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir.1987) (holding that the transfer of a prisoner rendered moot his claim for injunctive relief). Section 1983 actions seeking injunctive and/or declaratory relief have been declared moot when the practices, procedures, or regulations challenged were no longer in use. *See, e. g., Tawwab v.*

5

*Metz*, 554 F.2d 22 (2d Cir. 1977); *Bradley v. Judges of Superior Court*, 531 F.2d 413 (9th Cir. 1976); *Shimabuku v. Britton*, 503 F.2d 38 (10th Cir. 1974); *Locke v. Board of Public Instruction*, 499 F.2d 359 (5th Cir. 1974); *Wilkinson v. Skinner*, 462 F.2d 670 (2d Cir. 1972); *Uzzell v. Friday*, 401 F.Supp. 775 (M.D.N.C.1975), aff'd in pertinent part, 547 F.2d 801 (4th Cir. 1977); *Rappaport v. Little League Baseball, Inc.*, 65 F.R.D. 545 (D.Del.1975).

Plaintiff was released from custody on August 26, 2014, the date he pled guilty to charges of second degree assault and possession of a dangerous weapon and received time served. ECF 16-2 at p. 1. Plaintiff was again arrested on September 28, 2014, on similar charges, but all were ultimately dismissed and he was released from custody on January 10, 2015. *Id.* at p. 2. His release from custody makes his request for injunctive or declaratory relief moot and subject to dismissal.

Punitive Damages

The named defendants, Director Oliver, Warden Foxwell, and the Warden of CBIC, are alleged only to have communicated with other officials about plaintiff's request for a Kosher diet. There is no evidence on the face of the Complaint, and plaintiff has offered none in rebuttal to Defendants' motion, that the conduct alleged was the result of reckless or callous indifference to plaintiff's federally protected rights. *See Smith v. Wade*, 461 U.S. 30, 56 (1983) (punitive damages available against individual defendant where conduct is shown to be motivated by evil intent).

Supervisory Liability

To the extent defendants are sued on the theory they are responsible for other employees who did not provide plaintiff with the requested religious diet, the claim fails. It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-*

*Lane v. Martin*, 355 F.3d 766, 782 (4th Cir.2004) (no respondeat superior liability under § 1983); *see also Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir.2001) (no respondeat superior liability in a Bivens suit). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.' " *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir.2001) *citing Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir.1984). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.1994). Plaintiff has pointed to no action or inaction on the part of defendants that resulted in a constitutional injury.

The complaint shall be dismissed by separate order which follows.

Date _____

_____
J. Frederick Motz
United States District Judge

7